UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| OFF LLC, *an Oregon limited liability company*,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No. 1:25-cv-00081-MTK<br><br>**OPINION AND ORDER** |

**KASUBHAI,** United States District Judge:

Plaintiff OFF LLC brings claims against Defendant United States of America for conversion and negligence after Defendant took possession of Plaintiff's cannabis plants. Defendant moves to dismiss Plaintiff's claims. For the reasons stated below, Defendant's motion (ECF No. 12) is granted.

## BACKGROUND

Plaintiff OFF LLC operates in Jackson County, Oregon as a licensed industrial hemp producer. Am. Compl. ¶¶ 3–4, ECF No. 8. In 2020, Plaintiff was the subject of a criminal investigation for conspiracy to traffic marijuana. *See id.* at ¶¶ 4, 6.

Marijuana and industrial hemp are both cannabis plants but are classified differently under federal law. *Id.* at ¶ 5. Laboratory testing is the only way to determine whether a cannabis plant is marijuana or hemp. *Id.*

Page 1 — OPINION AND ORDER

On October 20, 2020, the Honorable Mark D. Clarke issued a federal warrant authorizing law enforcement to seize "evidence of the commission, or fruits or instrumentalities, of violations of Title 21, United States Code, Section 846 — Conspiracy to Traffic Marijuana[.]" Karabinas Decl. Ex. 2, at 5, ECF No. 14.[1] That included "[c]ontrolled substances, specifically marijuana, concentrated cannabis, edibles, and other marijuana products[.]" *Id.*

The following day, "members of IMET, MADGE and HSI-Medford" executed the search warrant on Plaintiff's Jackson County property.[2] Litz Decl. Ex. 1, at 10, ECF No. 13; *see also* Am. Compl. ¶¶ 4, 6. HSI seized Plaintiff's marijuana-related property, IMET logged the items into evidence, and "[t]he drug items" were ultimately "logged into the Jackson County Sheriff's Office Property division." *Id.* That seizure included 19 boxes that contained more than 300 pounds of cannabis. *See id.* (noting that "19 cardboard boxes with [304 pounds of] marijuana product" were seized); Am. Compl. ¶ 6 (alleging that "law enforcement seized a total of 19 boxes of cannabis material, amounting to 383 pounds of cannabis"). Plaintiff alleges that on

---

[1] As discussed below, the Court finds the cited portions of the Declaration of Jeannette Litz and the Declaration of Christopher Karabinas incorporated by reference into Plaintiff's Amended Complaint or otherwise subject to judicial notice.

[2] The Court takes judicial notice of the following as "not subject to reasonable dispute": (1) "MADGE" is Medford Area Drug and Gang Enforcement, a "team comprised of local, state and federal investigators that work in partnership with other government agencies to share information and resources to dismantle drug trafficking"; (2) "IMET" is the Illegal Marijuana Enforcement Team of Jackson County, Oregon; and (3) HSI is "Homeland Security Investigations . . . a premier federal law enforcement agency within the Department of Homeland Security (DHS)." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *MADGE*, MEDFORD OREGON, https://www.medfordoregon.gov/Government/Departments/Police/MADGE [https://perma.cc/4BB5-MXA5]; *IMET – Illegal Marijuana Enforcement Team Presentation*, JACKON COUNTY OREGON, https://www.jacksoncountyor.gov/news_detail_T10_R138.php [https://perma.cc/BX93-PQWN]; *Who We Are*, U.S. IMMIGR. & CUSTOMS ENF'T, https://www.ice.gov/about-ice/hsi [https://perma.cc/U5NT-RNC5].

October 23, 2020, laboratory testing revealed that 383 pounds of the seized cannabis plants were industrial hemp, not marijuana. Am. Compl. ¶ 6.

On February 3, 2022, the industrial hemp was transferred to the Department of Homeland Security's ("DHS") Medford office. *Id.* at ¶ 7. Counsel for Plaintiff requested the return of OFF's industrial hemp but received no response. *Id.* at ¶ 8. Plaintiff alleges that as of February 3, 2022, when the United States assumed custody of Plaintiff's cannabis plants, industrial hemp had a fair market value of $400 per pound, amounting to $153,200 worth of industrial hemp that was seized. *Id.* at ¶ 9.

On January 19, 2024, pursuant to 28 U.S.C. § 2401(b), Plaintiff presented a claim for damages to DHS. *Id.* at ¶ 10. DHS did not dispose of Plaintiff's claim within six months, which constitutes a denial of the claim under 28 U.S.C. § 2675(a). *Id.* Accordingly, Plaintiff alleges that it has exhausted its administrative remedies. *Id.*

**STANDARDS**

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, courts must presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Advanced Integrative Med. Sci. Institute, PLLC v. Garland*, 24 F.4th 1249, 1256 (2022). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P.

12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

## DISCUSSION

Defendant moves to dismiss Plaintiff's Amended Complaint, arguing that (1) the Court lacks jurisdiction because the United States has not waived sovereign immunity, and (2) Plaintiff's claims are time-barred.

### I.     Evidence Incorporated by Reference

As an initial matter, Defendant offers several pieces of evidence but does not seek to convert its motion to dismiss into one for summary judgment. Defendant submits the following: (1) Plaintiff's January 19, 2024 claim for damages, which included the October 21, 2020 Medford Police Department report, lab results from Plaintiff's cannabis plants, and letters from two businesspeople in the hemp industry certifying the value of hemp at the time Plaintiff's plants were allegedly converted (Litz Decl. Ex. 1); and (2) the October 20, 2020 search warrant that law enforcement relied on to search and seize Plaintiff's property (Karabinas Decl. Ex. 2). Plaintiff does not dispute the accuracy of these documents nor Defendant's request to have them considered.

The Court finds that both items, with the exception of the hemp valuation letters, are incorporated by reference into Plaintiff's Amended Complaint because Plaintiff "refers extensively to the document[s] or the document[s] form[] the basis of [Plaintiff's] claim[s]." *See, e.g.*, *Khoja*, 899 F.3d at 1002 (quotation marks and citation omitted); *see also* Am. Compl. With

Plaintiff's allegations and those pieces of evidence at hand, the Court turns to Defendant's motion.

## II. Defendant's Motion to Dismiss

Defendant argues that Plaintiff's claims should be dismissed because this Court lacks subject matter jurisdiction and the claims are untimely. Because the Court determines that it lacks jurisdiction, it does not reach the issue of timeliness.

Defendant's motion is construed as a facial attack because it is based on Plaintiff's allegations and does not dispute their truth. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Defendant's arguments hinge on whether the Federal Tort Claims Act ("FTCA") applies such that the United States waived its sovereign immunity. Specifically, the parties dispute the application of an exception to an exception of the FTCA.

### A. FTCA Legal Standards

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Accordingly, for a court to have jurisdiction over an action against the United States, the United States must have expressly waived its right to sovereign immunity. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Otherwise, the case must be dismissed. *Id.*

"The FTCA waives sovereign immunity for claims against the federal government arising from torts committed by federal employees." *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008) (citing 28 U.S.C. § 1346(b)(1)). The Act provides that the United States shall be liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b).

The "detention of goods" exception to the FTCA provides that the United States does *not* waive sovereign immunity for claims "arising in respect of . . . the detention of any goods, merchandise, or other property by any . . . law enforcement officer[.]" 28 U.S.C. § 2680(c); *Foster*, 522 F.3d at 1075. This exception "generally is interpreted broadly." 522 F.3d at 1074 (citation omitted). In *Kosak v. United States*, for example, the Supreme Court held that the detention of goods exception applies to "any claim arising out of the detention of goods, . . . includ[ing] a claim resulting from negligent handling or storage of detained property." 465 U.S. 848, 854 (1984).

There is an exception to the detention of goods exception, found in the Civil Asset Forfeiture Reform Act ("CAFRA"). That provision applies to claims arising out of property damage if:

> (1) the property was *seized for the purpose of forfeiture* under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
> (2) the interest of the claimant was not forfeited;
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c) (emphasis added). "In short, CAFRA canceled the detention of goods exception and restored the waiver of sovereign immunity—or 're-waived' sovereign immunity—with respect to certain forfeiture-related seizures." *Foster*, 522 F.3d at 1075. Accordingly, plaintiffs *may* sue the United States for "any claim based on injury or loss of goods, merchandise, or other property" if those four factors are met. *See* 28 U.S.C. § 2680(c). In *Foster*, the Ninth Circuit held that the CAFRA exception "applies only to property seized *solely* for the purpose of forfeiture. . . [T]he fact that the government may have had the possibility of a forfeiture in mind when it seized Plaintiff's property does not detract from the application of the

detention of goods exception when criminal investigation was a legitimate purpose of the initial seizure." *Id.* Under *Foster*, if law enforcement had any purpose other than forfeiture when seizing the property, the detention of goods exception applies and the CAFRA exception does not, so the United States maintains its sovereign immunity. *See id.*

### B.     Analysis

Here, the parties do not dispute that the detention of goods exception to the FTCA applies because Plaintiff's claims arose out of the detention of its cannabis plants. Plaintiff also does not dispute that DHS seized its cannabis in 2020 as part of the criminal investigation into Plaintiff's marijuana conspiracy. Therefore, the 2020 seizure was not solely for the purpose of forfeiture, so the CAFRA exception does not apply, and Plaintiff may not sue for that conduct. Neither does Plaintiff challenge the legitimacy of the 2020 seizure, even though the plants turned out to be industrial hemp and not evidence of any marijuana crimes.

At issue is whether the CAFRA exception applies to DHS's conduct in February of 2022—that is, whether Plaintiff's cannabis plants were "seized solely for the purpose of forfeiture" at that time. Plaintiff contends that Defendant seized Plaintiff's cannabis plants anew when it assumed physical possession of them. As detailed above, the plants were in the custody of Jackson County Sheriff's Office from October of 2020 until February of 2022, when DHS took custody of the property. At that time, Plaintiff contends, because DHS knew or should have known that the plants were industrial hemp and not marijuana, Defendant negligently assumed possession of property not authorized by the warrant and converted Plaintiff's property by failing to return it. And that seizure, according to Plaintiff, was solely for the purpose of forfeiture since the industrial hemp plants were no longer relevant to the investigation of the marijuana conspiracy.

Plaintiff's argument asks the Court to ignore the initial seizure in 2020, which DHS conducted in significant part, and look only to DHS's actions in 2022, when it took physical possession of the plants. If DHS's actions in 2022 were not a new seizure, then Plaintiff's claims fall apart under the text of the statute. *See* 28 U.S.C. § 2680(c)(1) (requiring that the property be "*seized* for the purpose of forfeiture") (emphasis added); *see also Kosak*, 465 U.S. at 854 n.9 ("We think that the proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception—no less and no more.") (quotation marks and citation omitted).

On these facts, Plaintiff has failed to establish that key element. This case might be different if the question were whether Plaintiff's property was "taken possession of for the purpose of forfeiture," but under CAFRA, the Court determines only that the property was not *seized* for the purpose of forfeiture. This holding serves the objectives of the FTCA exceptions by "ensuring that certain governmental activities [are not] disrupted by the threat of damage suits[.]" *Kosak*, 465 U.S. at 858; *see also United States v. $149,345 U.S. Currency*, 747 F.2d 1278, 1283 (9th Cir. 1984) ("The apparent intent of section 2680(c) is to limit governmental liability for improper seizures and to restrict claimants to the statutory procedures of the forfeiture laws."). Perhaps most importantly, this reasoning comports with the "well-established principle that waivers of sovereign immunity must be construed strictly in favor of the sovereign." *Foster*, 522 F.3d at 1074 (citations omitted).

To start, Plaintiff cites no case, precedential or otherwise, for its proposition that a transfer of seized property between law enforcement agencies constitutes a new seizure subject to a new analysis under the FTCA. Neither does Plaintiff cite any case where an agency was liable for conversion for a transfer of seized property. Other courts have, albeit in the Fourth

Amendment context, determined that a transfer of custody from one law enforcement agency to another does not create a new seizure. *See, e.g.*, *Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018) ("A person can't be seized while seized any more than he can jump while jumping. He's either seized or not; he isn't extra seized when forced to sit in a police car or stand in a lineup."); *United States v. Edwards*, No. 21-CR-10012, 2023 WL 3175420, at *4–5 (C.D. Ill. May 1, 2023) ("We are not convinced that the simple transfer of property from a state sovereign to the federal sovereign should be viewed as a second seizure which must comply with the Fourth Amendment."); *Crowder v. Barrett*, No. 17C0381, 2022 WL 864519, at *9 (N.D. Ill. Mar. 23, 2022) ("Plaintiff had already been seized as a matter of law when he was arrested for domestic battery. His transfer to a different police station for questioning about the armed robbery . . . did not constitute a 'new' seizure for Fourth Amendment purposes."). Plaintiff gives the Court no reason to believe that "seized" has a different meaning under the FTCA than it does in other contexts.

Plaintiff principally relies on *Pearsons v. United States*, 723 F. Supp. 3d 825, 836 (C.D. Cal. 2024). In that case, law enforcement obtained warrants to criminally investigate a business that provided storage for valuable goods. *Id.* at 828. The plaintiffs were customers of that business whose property was stored in safe deposit boxes in the company's steel structures called "nests." *Id.* A federal officer specifically represented in the warrant application that the FBI "sought to seize the nests of boxes themselves, not their contents," and "promised . . . that the FBI would preserve . . . property held within safe deposit boxes for safekeeping and return the property to the rightful owners." *Id.* (quotation marks, emphasis, and citations omitted). But after seizing the nests, the officer "spearheaded a separate plan," and "instead of honoring its promises to safeguard the safe-deposit boxes and return the contents to the rightful owners, the

Page 9 — OPINION AND ORDER

government instead broke into the safe-deposit boxes to look for property to forfeit and searched for evidence to support the forfeitures." *Id.* (quotation marks and alterations omitted). The Government contended that the CAFRA exception did not apply because agents seized the property "for both investigatory and forfeiture purposes," but the court rejected that argument:

> Plaintiffs specifically allege that the FBI's warrant application sought to seize the nests of boxes themselves, <u>not</u> their contents. Moreover, Plaintiffs allege that the FBI planned to administratively forfeit all boxes containing property worth at least $5,000 (the FBI's minimum threshold for profitability), and to conduct investigatory searches of the boxes for evidence to support the forfeitures. These statements allege that Plaintiffs' property was not seized for any purpose other than for the purpose of forfeiture.

*Id.* at 836 (quotation marks and citations omitted).

Plaintiff contends that this case "is on all fours with . . . *Pearsons*." Pl.'s Resp. 5, ECF No. 18. But that case is not only not precedential, it is distinguishable. Here, unlike in *Pearsons*, Plaintiff does not argue that law enforcement exceeded the scope of the warrant in seizing Plaintiff's cannabis plants, and it is undisputed that law enforcement seized the plants as part of a valid criminal investigation. *Pearsons* also looked to the initial seizure, not a transfer of already seized property. Again, Plaintiff's argument considers only the isolated actions of DHS in 2022 and ignores the fact that the cannabis plants were already in law enforcement custody after DHS seized them in 2020.

The cases cited by Defendant are more apt. For example, in *Foster*, warrants authorized federal officers to seize the plaintiff's firearms as "contraband, evidence of the crime, fruits of the crime, [and/or] instruments of the crime" of trafficking illegal firearms. 522 F.3d at 1073 (quotation marks omitted). Federal agents seized more than 800 firearms, and the plaintiff alleged that the agents negligently damaged that property. *Id.* at 1073–74. The plaintiff relied on a letter from the Bureau of Alcohol, Tobacco, and Firearms that stated the property was seized

for forfeiture. *Id.* at 1073, 1075. The Ninth Circuit held that, although forfeiture was one purpose of the seizure, criminal investigation was another legitimate purpose, so the CAFRA exception did not apply. *Id.* at 1075 (holding that the CAFRA exception "applies only to property seized *solely* for the purpose of forfeiture") (emphasis in original).

Additionally, in *Agro Dynamics, LLC v. United States*, 692 F. Supp. 3d 1003 (S.D. Cal. 2013), the court applied *Foster* to a case like this one and found that the CAFRA exception did not apply. There, like here, the plaintiff was a hemp growing company whose hemp plants were seized pursuant to a warrant that sought evidence of marijuana cultivation. 692 F. Supp. 3d at 1010–11. Law enforcement officers seized and destroyed more than $3 million worth of the plaintiff's hemp plants, and plaintiff alleged claims for conversion and negligence. *Id.* at 1011, 1024. The court rejected plaintiff's invocation of the CAFRA exception because "even assuming the Federal Officers had forfeiture in mind, the well-pled facts show that their search also had the 'dual purpose' of a criminal investigation for illegal cultivation of marijuana." *Id.* at 1024.

Plaintiff attempts to distinguish *Agro Dynamics* by noting that the officers in that case did not test the cannabis plants when they seized them, so the plants could have been evidence of criminal activity when the government allegedly converted them. But that was the case here, too: DHS did not test the plants when it seized them in 2020, and it only seized the plants because they were expected to be evidence of criminal activity.

In sum, Plaintiff has not established that its cannabis plants were seized solely for the purpose of forfeiture because the relevant seizure occurred in 2020 when DHS seized the plants as part of its criminal investigation. Plaintiff has thus failed to show that the United States has waived sovereign immunity for these claims, and they must be dismissed for lack of subject matter jurisdiction.

The Court disallows leave to amend the Complaint because, based on the above, "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quotation marks and citation omitted).

## CONCLUSION

For the reasons above, Defendant's Motion to Dismiss (ECF No. 12) is GRANTED and Plaintiff's Amended Complaint (ECF No. 8) is DISMISSED with prejudice and without leave to amend.

DATED this 10th day of October 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge
